# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| ST. PAUL FIRE AND MARINE INSURANCE COMPANY, | } } } | |
| Plaintiff, | } } | |
| v. | } } | CASE NO. 2:07-CV-0921-RDP |
| ERA OXFORD REALTY COMPANY GREYSTONE, LLC; et al., | } } } } | |
| Defendants. | } | |

## MEMORANDUM OPINION

Before the court are cross motions for summary judgment.  St. Paul Fire and Marine Insurance Company ("St. Paul") has moved for summary judgment on all counts, seeking a declaration of its right to refuse to defend and indemnify ERA Oxford Realty Greystone, LLC ("ERA Oxford"); William A. Waldrip; Charlene Phillips; ERA Franchise Systems, Inc. ("ERA Franchise"); and Mike Manacuso (collectively "the ERA Defendants").  (Doc. # 25).  The ERA Defendants have moved for partial summary judgment, seeking a declaration of rights that St. Paul must defend them.  (Doc. # 30).  Both parties have fully briefed the issues and the motions came under submission on September 24, 2007.

Also before the court is St. Paul's Motion for Suggestion of Certification of a Question to Alabama Supreme Court (Doc. # 38) filed on November 2, 2007.  The ERA Defendants oppose that motion.  (Doc. # 40).

I.      STATEMENT OF UNDISPUTED FACTS

Because this is a declaratory judgment action relating to an underlying lawsuit, *Freda Jones, et al. v. William A. Waldrip, et al.*, Civil Action No. CV-2007-900172, filed and pending in the Circuit Court of Jefferson County, Alabama (the "underlying action"), the facts are largely undisputed.  Whether St. Paul has any duty to defend or indemnify depends largely on the allegations of the underlying action and the language of the insurance policy, which are outlined below.

A.      The Parties and Their Claims in This Action

1.      St. Paul Fire and Marine Insurance Company

St. Paul filed this action seeking a declaration that it owes neither a duty to defend nor a duty to indemnify the ERA Defendants in the underlying action.   It has entered into an insurance agreement with the ERA Defendants - the Real Estate Agents or Brokers Professional Liability Protection Policy No. GL00650699 ("the Policy") - which may or may not provide coverage in suits filed against the ERA Defendants.

2.      The ERA Defendants

The ERA Defendants are the defendants in both the declaratory judgment action pending before this court and the underlying claims asserted in state court.

ERA Oxford is an ERA franchise that provides real estate and brokerage services.  Waldrip and Phillips work for ERA Oxford.  ERA Franchise is the franchise grantor for ERA Oxford, and Manacuso works for ERA Franchise.

The ERA Defendants oppose St. Paul's motion for summary judgment. They have also moved for summary judgment on their counterclaim seeking a declaration that St. Paul owes them

a duty to defend.  In addition, the ERA Defendants have filed a counterclaim seeking damages from

St. Paul for breach of contract, but they do not seek summary judgment on that claim.

### 3.     The Underlying Plaintiffs

Freda Jones; Deerfoot Realty, Inc.; Jeff Johnson; Kathy Johnson; and Johnson Realty Pros,

LLC are the Underlying Plaintiffs.  They have filed the underlying action against the ERA

Defendants seeking damages under several contract and tort theories.

The Underlying Plaintiffs have not filed for summary judgment in this action nor have they

asserted any counterclaims.

### B.     The *Jones* Suit

There are nine counts against the ERA Defendants in the underlying action, including: (1)

breach of contract to merge; (2) willful, reckless, or mistaken misrepresentation; (3) deceit; (4)

concealment; (5) conversion of commissions; (6) intentional interference with business relations;

(7) restraint of trade; (8) unlawful trust or monopoly, and (9) civil conspiracy with respect to Counts

6-8.

These claims arise from two divergent sets of facts involving two distinct sets of plaintiffs.

All of the Underlying Plaintiffs allege that the ERA Defendants approached them and proposed to

merge their real estate practices together.  The Johnsons allege that they and the ERA Defendants

formed a contract to merge but that the ERA Defendants later reneged on the agreement.  Freda

Jones and Deerfoot Realty actually merged with ERA Oxford, but the merger did not satisfy Jones.

She claims that the ERA Defendants did not honor their promises to her by failing to: (1) pay rent

on Deerfoot Realty's building; (2) provide her health insurance; and (3) give her the business cards

and signs she needed to sell real estate.  Jones also alleges that the ERA Defendants withheld

3

commissions from her by refusing to transfer her real estate license at the proper time. When Jones notified the ERA Defendants of her plan to leave ERA Oxford, she alleges that the ERA Defendants refused to give her the ten percent share of ERA Oxford that they had promised her upon the merger. Jones claims that the ERA Defendants also mailed her real estate license to the Alabama Real Estate Commission instead of holding it locally, effectively preventing her from selling real estate lawfully.

### C.     The Policy

The parties agree that there is a valid insurance contract in this case, and its terms are not in dispute. The Policy includes ERA Oxford Realty Co., Inc. and ERA-Oxford Realty Greystone, LLC as named insureds. It is a one-year policy, effective from February 11, 2007 to February 11, 2008, and limits St. Paul's liability to $1,000,000 with a $5,000 deductible.

The following provisions of the contract are relevant to this case:

### 1.     Coverage Grants and Definitions

[St. Paul will] pay amounts any protected person is legally required to pay as damages for covered loss that:
•     results from the performance of, or failure to perform, real estate professional services by you or on your behalf; and
•     is caused by a wrongful act committed on or after any retroactive date that applies and before the ending date of this agreement.

(Policy, A-24).

*Real estate professional services* means those professional services performed, or failed to be performed, for others as duties as notary public and in any of the following capacities that are listed in the Coverage Summary:
•     Real estate agent or broker
•     Property manager

(*Id.*).

*Real estate agent or broker* means a properly licensed real estate agent or broker, including the duties of such agent or broker in any of the following capacities:

> • Member of a real estate accreditation, standards review, or similar real estate board or committee
> • Mortgage broker
> • Real estate consultant or counselor
> • Real estate leasing agent
> • Real estate referral agent

(*Id*.).

> [St. Paul will] have the right and duty to defend any protected person against a claim or suit for loss covered by this agreement. [St. Paul will] have such right and duty even if any of the allegations of such claim or suit are groundless, false, or fraudulent.

(*Id*. at A-25).

## 2.    Exclusions and Definitions

> [St. Paul will not] cover loss for which any claim or suit is made or brought by or for any current or former protected person against any current or former protected person.

(*Id*. at A-31).

> Independent contractors and their employees are protected persons if no other insurance for loss covered by this agreement applies to such persons.  But only for claims or suits that result from:
> • real estate professional services within the scope of such independent contractor's contract with you, or work done within the scope of employment by such independent contractor's employee; and
> • the performance of, or failure to perform, your real estate professional services.

(*Id*. at A-29).

> [St. Paul will not] cover loss that results from any criminal, dishonest, or fraudulent wrongful act or any knowing violation of rights or law committed by:
> • any protected person; or
> • anyone with the consent or knowledge of any protected person.
> But, [St. Paul will not] apply this exclusion to any protected person who [is not] shown in the Introduction as a named insured and who [did not]:
> • commit, have knowledge of, or acquiesce in such wrongful act or violation; or

5

> • gain an advantage, as a result of such wrongful act or violation, to which such protected person knew or should have known the protected person [would not] be entitled.

(*Id*. at A-31-32).

> [St. Paul will not] cover loss that results from any actual or alleged violation of any securities, anti-trust, or restraint of trade laws.

(*Id*. at A-33).

> Damages means compensatory damages imposed by law.
> But [St. Paul will not] consider damages to include any:
> > • civil or criminal fines, forfeitures, penalties, or sanctions; or
> > • fees charged or incurred by any protected person.

(*Id*. at A-24).

## II.     SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment when it can "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex,* 477 U.S. at 323. Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of*

*Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991) (en banc)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; *i.e.*, facts that would entitle it to a directed verdict if not controverted at trial.  *See Fitzpatrick*, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but

does not require evidence negating the non-movant's claim; it simply requires that the movant point

out to the district court that there is an absence of evidence to support the non-moving party's case.

*See Fitzpatrick*, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second

method, the non-moving party may either point out to the court record evidence, overlooked or

ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come

forward with additional evidence sufficient to withstand a directed verdict motion at trial based on

the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest

on mere allegations, but must set forth evidence of specific facts.  *See Lewis v. Casey*, 518 U.S. 343,

358 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

In the insurance context, Alabama law provides that "[t]he issue whether a contract is

ambiguous or unambiguous is a question of law for a court to decide.... If the terms within a contract

are plain and unambiguous, the construction of the contract and its legal effect become questions of

law for the court." *Nationwide Ins. Co. v. Rhodes*, 870 So.2d 695, 696-97 (Ala. 2003) (citation

omitted); *see also B.D.B. v. State Farm Mut. Auto. Ins. Co.*, 814 So.2d 877, 879 (Ala.Civ.App. 2001)

(stating that "[t]he interpretation of an insurance contract presents a question of law").

## III.    ANALYSIS

Because a duty to indemnify can only exist where there is a duty to defend, the court will first

take up the Rule 56 issues related to the duty to defend.

### A.    Duty to Defend

The duty to defend is broader than the duty to indemnify.  *Tanner v. State Farm Fire & Cas.*

*Co.*, 874 So.2d 1058, 1063 (Ala. 2003).  In *Tanner*, the Alabama Supreme Court explained:

> If the allegedly injured person's complaint against the insured alleges a covered accident or occurrence, then the insurer owes the duty to defend even though the evidence may eventually prove that the gravamen of the complaint was not a covered accident or occurrence. If the complaint against the insured does not, on its face, allege a covered accident or occurrence, but the evidence proves one, then the insurer likewise owes the duty to defend. The insurer owes no duty to defend only if neither does the complaint against the insured allege a covered accident or occurrence nor does the evidence in the litigation between insurer and insured prove a covered accident or occurrence. If the allegedly injured person's complaint against the insured alleges or the evidence proves not only claims based on a covered accident or occurrence but also claims not based on a covered accident or occurrence, the insurer owes a duty to defend at least the claims based on a covered accident or occurrence.

*Id.* at 1065 (citations omitted).

Determining whether St. Paul has a duty to defend the ERA Defendants in the underlying action requires the court to analyze first what coverage is granted in the Policy and then what the exclusions to coverage provide.

### 1.      "Real Estate Professional Services"

The most important issue in this case is whether, and to what extent, the allegations in the underlying suit involve "real estate professional services." The Policy offers a definition of this term, but the definition is far from clear. "Real estate professional services" are "professional services performed, or failed to be performed, for others as duties [as a real estate agent or broker]." The contract does not define "professional services," and thereby presents an interpretational problem to this court.

Fortunately, the Alabama Supreme Court has already interpreted the term "professional services" in a similar context. *St. Paul Mercury Ins. Co. v. Chilton-Shelby Mental Health Center*, 595 So.2d 1375, 1377-78 (Ala. 1992). In *Chilton-Shelby,* the court interpreted "professional

services" very broadly,[1] holding that a mental health clinic was covered under its professional liability policy for damages incurred while transporting a child for the local YWCA. *Id.* at 1378. The court's analysis hinged upon two facts: first, that Chilton-Shelby Mental Health Center was named as a profession in the policy, and second that the policy covered losses that "arose out of" professional services. *Id.* The Alabama Supreme Court gave "professional services" the broadest reasonable interpretation under the policy, rejecting the argument that coverage under the professional liability policy required the exercise of some "'learned' profession." *Id.* Once the court identified that the Center was a covered profession, it did not hesitate to find coverage even where there seemed to be an extremely attenuated link between the Center's core activities (providing mental health services) and the conduct that caused the loss (providing contract transportation services for a daycare center).

Applying *Chilton-Shelby* to this case is a straightforward legal task. While the Policy does not define exactly which "professions" are encompassed by the Policy, it is very clear that "real estate agent or broker" is a covered profession. (Policy, A-24.) Losses "result[ing] from" the performance of real estate professional services are covered. (*Id.*). The Policy's language, while not identical to the policy in *Chilton-Shelby*, is functionally similar. St. Paul has argued that the allegations in the underlying action do not involve real estate professional services, but that argument is simply off the mark. A faithful application of Alabama law requires this court to find otherwise. The link between the real estate "profession" and the real estate "business" is much stronger than

---

[1] It is important to note that, similar to the policy at issue here, the policy in *Chilton-Shelby* did not specifically define "professional services." *Chilton-Shelby*, 595 So.2d at 1377.

the link in *Chilton-Shelby*. Therefore, under Alabama law, the claims in the underlying action result from professional services.

### 2. "For Others"

Unlike the policy in *Chilton-Shelby*, the policy in this case covers only losses resulting from real estate professional services provided "for others." St. Paul, urging this court to interpret this requirement strictly, would have "for others" mean "at the request of others" or "accruing directly to the benefit of others." Under this approach, only services performed for customers would be covered. The ERA Defendants propose a broader interpretation, suggesting that "for others" should include "generally to the benefit of others" or "required by someone other than the covered person."

Neither interpretation is completely satisfactory. The ERA Defendants' interpretation would make the limiting phrase "for others" a nullity because it is possible to find some benefit to the broader public in every action. Wherever possible, courts should give effect to all of the language in a contract. *See Celtic Life Ins. Co. v. McLendon*, 814 So.2d 222, 225 (Ala. 2001) (preferring an interpretation that gave meaning to every word to an interpretation that made words superfluous); 11 RICHARD A. LORD, WILLISTON ON CONTRACTS § 32:5 (4th ed.) ("To the extent possible. . . every word, phrase or term of a contract must be given effect. An interpretation which gives effect to all provisions of the contract is preferred to one which renders a portion of the writing superfluous, useless or inexplicable"). On the other hand, St. Paul's approach violates the well-established rule that courts should interpret insurance contracts as broadly as is reasonable in favor of coverage. *See Taliaferro v. Progressive Specialty Ins. Co.*, 821 So.2d 976, 980 (Ala. 2001) (stating that "[i]t is

fundamental that insurance contracts are to be 'construed liberally in favor of the insured and strictly against the insurer'") quoting *Allstate Ins. Co. v. Skelton*, 675 So.2d 377, 379 (Ala. 1996).[2]

While these competing policies are certainly as important as they are intractable, resolving their application here is not difficult. A reasonable interpretation gives effect to both policies in letter and spirit. It is already established that the claims in this case arise out of real estate professional services. While the allegations do not involve conduct directly connected to clients, they do involve conduct that is closely related to clients. Brokers, as defined by statute, have supervisory roles that are directly related to their licenses. *See* ALA. CODE § 34-27-34(a)(1)-(2) (2007).[3] Many of the allegations in the underlying action arguably implicate the ERA Defendants'

---

[2]The ERA Parties' interpretation would allow conduct "for others" to include sweeping the floor; St. Paul's interpretation would restrict "for others" to a scope narrower than the strictest species of agency–only actions in response to specific requests would be covered.

[3]The statute reads, in the relevant part:

(a)(1) A broker may serve as qualifying broker for a salesperson or associate broker only if licensed in Alabama, his or her principal business is that of a real estate broker, and *he or she shall be in a position to actually supervise the real estate activities of the associate broker or salesperson on a full-time basis.*
(2) A salesperson or associate broker shall not perform acts for which a license is required unless licensed under a qualifying broker. *A qualifying broker shall be held responsible to the commission and to the public for all acts governed by this chapter of each salesperson and associate broker licensed under him or her and of each company for which he or she is the qualifying broker. It shall be the duty of the qualifying broker to see that all transactions of every licensee engaged by him or her or any company for which he or she is the qualifying broker comply with this chapter. Additionally, the qualifying broker shall be responsible to an injured party for the damage caused by any violation of this chapter by any licensee engaged by the qualifying broker. This subsection does not relieve a licensee from liability that he or she would otherwise have.*

ALA. CODE. § 34-27-34(a)(1)-(2) (2007) (emphasis added).

12

supervisory duties as brokers.  For example, merging the real estate companies would require the ERA Defendants to transfer and maintain licenses, supervise additional associate brokers, incur additional potential liabilities, and oversee more transactions.  All of these activities are directly related to brokerage, and brokerage duties are owed to both the Alabama Real Estate Commission and the general public.  *Church v. Conlon-Tanner Corp*., 483 So.2d 383, 385 (Ala. 1985) (stating that "[a] qualifying broker is held responsible to the commission and to the public for the acts of each salesman licensed under him").  A broker must comply with the statute in order to provide services to clients, and therefore the real estate professional services performed by a broker in order to comply with the statute are performed "for others."[4]  Accordingly, the court finds that the allegations in this case fall within the coverage granted by the insurance agreement.  The court now turns to its analysis of the relevant exclusions.

### 3.        "Criminal, Dishonest, or Fraudulent Wrongful Acts" Exclusion

St. Paul argues that the "Criminal, Dishonest, or Fraudulent Wrongful Acts" exclusion ("CDFWA exclusion") bars coverage of the claims in the underlying action.  The ERA Defendants counter that the exclusion does not apply for two reasons: (1) the exclusion only applies to actual conduct, not mere allegations; and (2) St. Paul has not met its evidentiary burden of showing that the exclusion applies.  Alabama law requires that the *insurer* bear the burden of proving that an exception applies.  *Fleming v. Alabama Farm Bureau Mut. Cas. Ins. Co.*, 310 So.2d 200, 202 (Ala. 1975); *Sphere Drake Ins. P.L.C. v. Shoney's, Inc*., 923 F.Supp 1481, 1487 (M.D. Ala 1996).

---

[4]While it is possible that many services performed by a broker may fall within the definition of "for others" in this policy, this case only requires this court to address the narrower question of whether a broker's compliance with the statute qualifies as services "for others."  The answer to this narrow question is in the affirmative.  The court expresses no opinion on whether (and to what extent) the definition of "for others" may extend beyond these statutorily required actions.

The court is persuaded by the ERA Defendants' argument that the CDFWA exclusion does not apply here. First, that exclusion only applies to actual conduct, not to mere allegations. Elsewhere in the Policy, St. Paul uses language that excludes coverage for actual or alleged conduct,[5] but that language is not used in relation to this exception. This court must honor that difference and will not interpret the narrower language to be coextensive with the broader language. Until there is some affirmative showing by St. Paul that the ERA Defendants actually engaged in criminal, dishonest, or fraudulent wrongful acts, St. Paul cannot use the CDFWA exclusion to avoid its duty to defend those claims. Because it is impossible to determine whether the exclusion applies until the factfinder in the underlying action weighs the evidence, the CDFWA exclusion does not allow St. Paul to avoid defending the ERA Defendants.[6]

### 4.    Cross-Suits Exclusion

St. Paul also argues that the "cross-suits" exclusion excuses it from having to defend the ERA Defendants as to the claims against them. This exclusion bars coverage for suits "by or for any current or former protected person against any current or former protected person." (Policy, A-31). The ERA Defendants argue that this exclusion does not apply for three reasons: (1) because the

---

[5]For example, the "Known Wrongful Acts," "Pollution," and "Trade and Consumer Protection" exclusions apply to "actual or alleged" wrongful acts. (Policy A-32-33). St. Paul cannot avoid the fact that the CDFWA exclusion employs different language than that and other exceptions.

[6]St. Paul raises another argument that deserves attention. It argues that the exclusion must apply to fraud claims because "where a claim can only succeed if the referenced conduct is proven, the exclusion squarely applies and the insurer can have no duty to defend." (Doc. # 34, 20). While persuasively stated, the logic of this argument breaks down when it is put to the test because it looks only at the duty to indemnify. Even if an insured was sued only for fraud, the policy would require St. Paul to provide a defense because there is no way to tell whether the insured *actually* committed fraud before the trier of fact makes appropriate findings. While St. Paul will never have to indemnify its insureds for damages resulting from frauds they commit, the insurance agreement clearly contemplates that St. Paul may have to defend its insureds if they are falsely accused.

merger with Johnson Realty Pros never took place, only some of the Underlying Plaintiffs could have been protected persons; (2) the "separation of protected persons" provision prevents the application of the exclusion to ERA Franchise, Manacuso, Phillips, and Waldrip; and (3) the language of the cross-suits exclusion does not apply to suits by former independent contractors against protected persons.

The ERA Defendants' first argument is on the money.  Because the undisputed evidence shows that Johnson Realty Pros never merged with ERA Oxford, meaning that the Johnsons and their company never came under ERA Oxford's insurance agreement, the cross-suits exclusion does not relieve St. Paul of its duty to defend the claims of Kathy Johnson, Jeff Johnson, and Johnson Realty Pros against the ERA Defendants.

The "separation of insureds" provision[7] further limits the application of the cross-suits exclusion.  Under Alabama law, "separation of insured" (or "severability") provisions serve "to broaden or extend coverage rather than to limit it."  *Am. Cast Iron Pipe Co. v. Commerce & Indus. Ins. Co.*, 481 So.2d 892, 895 (Ala. 1985).  The ERA Defendants argue that, because Freda Jones was an employee or independent contractor of ERA Oxford and nobody else, the cross-suits exclusion cannot apply to ERA Franchise, Manacuso, Waldrip, or Phillips.  The court agrees.  In *United States Fire Ins. Co. v. McCormick*, 243 So.2d 367 (Ala. 1970), the Alabama Supreme Court examined a similar factual situation before it and held:

> The severability of interests provision requires consideration of each insured separately, independently of every other insured whether named or an additional insured. Applying this provision, the exclusion of an employee must mean that the

---

[7]The provision states that St. Paul "will apply this agreement separately to each protected person."  (Policy, A-29).

exclusion of an employee of the insured must be limited to an employee of that particular insured who claims coverage under the policy.

243 So.2d at 375.[8]  The *McCormick* holding binds this court and its application to the facts is straightforward.  Jones was an employee or independent contractor of only ERA Oxford, so the cross-suits exclusion can only exclude coverage for claims by Jones against ERA Oxford.  The exclusion does not reach the claims against other of the ERA Defendants.

The ERA Defendants' third argument is more complex.  The evidentiary record does not show whether Freda Jones was an employee or independent contractor of ERA Oxford.  If she were an employee, the cross-suits exclusion would clearly apply; however, the exclusion is far less clear as to independent contractors.  The insurance agreement places special conditions on when a former independent contractor is to be considered a "protected person":

> Any of your former independent contractors or their employees who is no longer providing services as an independent contractor to you is a protected person if no other insurance for loss covered by this agreement applies to such person, but only for claims, suits or proceedings for loss covered by this agreement that result from:
> •       real estate professional services within the scope of the independent contractor's contract with you; and
> •       the performance of, or failure to perform, your real estate professional services while such independent contractor was one of your independent contractors.

(Policy, A-29).  This provision provides that former independent contractors are protected persons only under certain circumstances.  Specifically, independent contractors are covered for losses that result when both the contractor and the principal performed real estate professional services and no other insurance applies.

---

[8]The *McCormick* holding has been cited with approval by the Alabama Supreme Court in subsequent opinions.  *See ACIPCO*, 481 So.2d at 895 (citing *McCormick* favorably); *Essex Ins. Co. v. Avondale Mills, Inc*., 639 So.2d 1339, 1342 (Ala. 1994) (same).

The ERA Defendants assert that this definition exclusively contemplates suits filed against former independent contractors by people outside of the organization and that this court should limit its application to that narrow category. This court must follow the language of the contract, however, and the language covers more than just suits by outsiders. As discussed above, the allegations of the underlying action concern the performance of real estate professional services by the ERA Defendants. Because Freda Jones was involved in the same conduct as the ERA Defendants, it follows logically that she must also have been performing real estate professional services.

Having decided that the underlying action arose from circumstances in which both parties were performing real estate professional services, the inquiry must turn to whether the suit "resulted" from Jones's real estate professional services.[9] The ERA parties have admitted that Freda Jones was "working (and selling real estate) for the ERA [Defendants]." (Def.'s Brief, 25). However, this evidence is too slim to find that the suit as a whole "resulted" from her conduct. The claims in this action all relate to things that the ERA Defendants allegedly have done. The ERA Defendants have argued extensively that they were involved in providing real estate professional services, but neither they nor St. Paul have produced evidence regarding Jones's conduct. As a result, the only way to determine whether the claims result from Jones's professional services is to look at the allegations of the various causes of action in the complaint.

All but one of the claims asserted by Jones require her to have performed real estate professional services. Count One, alleging breach of contract, states that Jones "performed [her] obligations pursuant to the contracts." (Complaint, ¶ 36). The complaint does not contain

_____

[9]To be sure, it is clear that the suit results from the real estate professional services of the ERA Defendants; however, according to the relevant definition, the suit must result from *both* the ERA Defendants' *and* Freda Jones's performance of real estate professional services.

information on what obligations the contracts placed on Jones other than the obligation to merge with ERA Oxford.  The court finds that St. Paul cannot rest on mere merger to show that the breach of contract claim resulted from Jones's performance of real estate professional services.  Merging is a necessary condition to Jones becoming an independent contractor, but is not itself a sufficient condition – some affirmative evidence must show what happened after the merger with respect to Jones's conduct under the contract.  Alabama law provides that an insurance company seeking to apply an exclusion "bears the burden of pointing to allegations of the complaint or other available evidence by which the claim was clearly excludable."  *Universal Underwriters Ins. Co. v. Stokes Chevrolet, Inc.*, 990 F.2d 598, 605 (11th Cir. 1993) (citing *U.S. Fidelity & Guar. Co. v. Armstrong*, 479 So.2d 1164, 1168 (Ala. 1985)).  St. Paul has not met this burden.[10]  Without showing by affirmative evidence a causal link between Jones's post-merger professional services and her breach of contract claim, St. Paul cannot apply the cross-suits exclusion to avoid its duty to defend Count One.[11]

The cross-suits exclusion does apply, however, to the remainder of the claims by Freda Jones. In Count Two, alleging willful, reckless, or negligent misrepresentation, Jones avers that she began transferring her real estate license to ERA Oxford.  (*Id.*, ¶ 50).  Jones will have to prove reliance in

_____

[10]Alabama law would allow this court to consider other evidence to determine whether St. Paul has met its burden with respect to exclusion of Count One.  *Ladner & Co. v. So. Guar. Ins. Co.*, 347 So.2d 100, 103 (Ala. 1977).  However, because there has been no discovery in this case, there is no evidence (beyond the complaint) that is before the court and relevant to this count.

[11]Because the duty to defend arises out of the complaint in an underlying action, the ERA Defendants need not make an affirmative showing that there is no genuine issue of material fact as to whether the allegations of the underlying action result from Jones's performance of real estate professional services.  Instead, they must only show that there is no genuine issue of fact as to whether allegations relating to Jones's performance appear in the complaint or other evidence.

order to succeed on this claim, and part of her reliance would necessarily involve transferring her real estate license.  Such a transfer falls under the broad definition of real estate professional services, and therefore the court finds that this claim results from Jones's performance of real estate professional conduct.

Counts Three and Four, in which the Underlying Plaintiffs allege deceit and concealment, involve similar allegations about transferring agents and licenses in reliance upon representations by the ERA Defendants.  As with Count Two, the Underlying Plaintiffs necessarily aver that they were involved in real estate professional services by bringing these claims.  The cross-suits exclusion thus equally applies to Counts Three and Four.

In Count Five, the Underlying Plaintiffs allege that the ERA Defendants converted commissions that were owed to Freda Jones.  Jones could have no claim for commissions were she not involved in selling real estate, an activity clearly within the broad definition of "real estate professional services."

Counts Six and Nine allege that the ERA Defendants interfered, and conspired to interfere, with the Underlying Plaintiffs business relationships.  The business relationships at issue in these counts are "relationships with [the Underlying Plaintiffs'] real estate agents."  (Complaint, ¶ 72).  By alleging that the ERA Defendants interfered with these relationships, the Underlying Plaintiffs necessarily assert that they were using the relationships in their business – *i.e.*, providing real estate professional services.  Because the allegations in Counts Six and Nine result from Freda Jones's real estate professional services, the cross-suits exclusion applies to those two counts as well.

In sum, the allegations of every count but Count One result from Freda Jones performing real estate professional services as an independent contractor or employee of ERA Oxford.  As a result,

the cross-suits exclusion applies to all counts but Count One with respect to Freda Jones.  St. Paul

does not owe a duty to defend ERA Oxford against Freda Jones with respect to Counts Two, Three,

Four, Five, Six and Nine; however, it does owe a duty to defend ERA Oxford against Freda Jones

with respect to Count One.

       **B.**       **Duty to Indemnify**

       Because St. Paul owes a duty to defend claims against all of the ERA Defendants, it would

be premature for this court to rule on the existence or scope of St. Paul's duty to indemnify.  *Ladner*

*& Co. v. So. Guar. Ins. Co.*, 347 So.2d 100, 102 (Ala. 1977); *Sphere Drake*, 923 F.Supp at 1493.

## IV.    **CERTIFICATION ANALYSIS**

       St. Paul has suggested that this court should certify a question to the Alabama Supreme Court

if analysis of the law shows an absence of controlling state law precedents.  Notably, it has not

specifically moved to have a particular question certified pursuant to Alabama Rule of Appellate

Procedure 18.[12]  The ERA Defendants oppose the motion, arguing *inter alia* that Alabama law does

not allow this court to certify questions that are not determinative to the lawsuit.  According to the

language of Rule 18 itself, and the cases applying it, the ERA Defendants are correct in stating that

---

[12]The Rule provides:

    (a) When Certified. When it shall appear to a court of the United States that there are
involved in any proceeding before it questions or propositions of law of this State
which are determinative of said cause and that there are no clear controlling
precedents in the decisions of the Supreme Court of this State, such federal court may
certify such questions or propositions of law of this State to the Supreme Court of
Alabama for instructions concerning such questions or propositions of state law,
which certified question the Supreme Court of this State, by written opinion, may
answer.

Ala. R. Civ. P. 18(a).

federal courts should only certify determinative questions.  ALA. R. APP. P. 18(a); *Spain v. Brown & Williamson Tobacco Corp.*, 872 So.2d 101, 104 (Ala. 2003) (stating that "certified questions can present tension between the legitimate, yet competing, interests of this Court in avoiding answering questions not necessary to a decision and the interests of a federal court needing assistance in dealing with uncharted areas of state law").[13]

Because the ERA Defendants contend that St. Paul owes a duty to defend, they assert that it is impossible to formulate a determinative question until the relevant facts relating to the duty to indemnify are developed in the underlying action.  St. Paul counters that it does not owe a duty to indemnify and that it is possible to formulate a determinative question with the current record.  The parties are arguing the opposite sides of the same coin.  If St. Paul owes a duty to defend, certification is improper because the record is too underdeveloped to pose a determinative question to the Alabama Supreme Court.  If St. Paul does not owe a duty to defend, the indemnification question would be determinative and could be proper for certification.  Because this court has found that St. Paul owes a duty to defend without having to make an "*Erie* guess," it declines to certify a question to the Alabama Supreme Court at this time.  When the underlying action yields specific fact findings, this record may require a court to certify a question.  That determination will have to wait,

---

[13]It is true that the Alabama Supreme Court said in *Spain* that "quite often when asked to respond to a certified question from a federal court, in the interest of comity we put aside concerns as to unknown or uncertain facts that might affect our answer so as to assist the federal court in answering a question of state law."  872 So.2d at 104 (contrasting the Alabama Supreme Court's practice with certifications under Rule 5 (certification by Alabama courts) and Rule 18 (certification by federal courts) of the Alabama Rules of Appellate Procedure).  The fact that the Alabama Supreme Court shows comity to the federal courts is commendable, but that comity is hardly an invitation for this court to certify questions that are not outcome determinative.  On the contrary, this court will strive to show similar respect to the Alabama Supreme Court by only certifying questions that comply with Rule 18.

for it is "'[o]ut of the facts the law arises.'"  *Walker v. Henderson*, 156 So.2d 633, 636 (Ala. 1963)

(attributing the maxim to Dean Albert J. Farrah of the University of Alabama School of Law); *Spain*,

872 So.2d at 104 (quoting *Walker* and applying the maxim to the certification analysis).

## V.    CONCLUSION

Accordingly, St. Paul's Motion for Summary Judgment is due to be granted in part and

denied in part.  (Doc. # 25).  The ERA Defendants' Motion for Partial Summary Judgment is due

to be granted in part and denied in part.  (Doc. # 30).  Specifically, this court declares that:

(1)    As to the claims of Freda Jones, St. Paul owes a duty to defend ERA Oxford with

respect to Count One of the complaint in the underlying action;

(2)    As to the claims of all of the other Underlying Plaintiffs, St. Paul owes a duty to

defend ERA Oxford with respect to Counts One, Two, Three, Four, Five, Six, and Nine of the

complaint in the underlying suit;

(3)    St. Paul owes a duty to defend William Waldrip, Charlene Phillips, ERA Franchise,

and Mike Manacuso with respect to Counts One, Two, Three, Four, Five, Six, and Nine of the

complaint in the underlying suit; and

(4)    It is premature to address St. Paul's duty to indemnify the ERA Defendants.  St.

Paul's Motion Suggesting Certification of a Question to the Alabama Supreme Court is denied.  The

court will enter an order consistent and contemporaneous with this memorandum opinion.

**DONE** and **ORDERED** this ____9th____ day of January, 2008.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

22